Good morning, Your Honors. May it please the Court. My name is Joseph Ott. I represented the plaintiff, Patricia Conway, in the underlying action, and she is the appellant here. We are reviewing the Court's decision to grant summary judgment, and I would remind the Court at this early stage in my argument that summary judgment review is de novo. In this case, my client, Patricia Conway, submitted materials to Mercy Hospital establishing, and I think it is uncontroverted on the record, that she had a sincerely held religious belief that opposed her to getting the CMS-mandated vaccine. Upon submission of this request, and before the request was even, from our perspective, even considered by Mercy, she was terminated. My client has filed a claim for retaliation against Mercy Hospital for her seeking to get an exception to the CMS vaccine mandate. Can I ask a question about your factual recitation? You said before they even consider it. Are you saying it on the record that the record shows that Mercy never rejected or accepted her request? Well, what I'm saying, the record doesn't establish conclusively either way, and we are challenging the Court's approach here in that the Court made the decision, the Honorable Judge White, and I understand why he did make the decision, that it's not relevant whether or not Mercy even considered the request. The Court's position in the underlying case is that no matter what Mercy did, they are immune from suit under the exception to the statute. The statutory exemption that is purportedly applicable in this case, it does describe how a religious organization, once established as being a religious organization, can claim exemption from the applicability of Title VII as to claims of direct religious discrimination. Importantly, the statute also mandates that the Court consider whether or not the claimed exemption and the actions of the employer that the employee is trying to get exempt from be connected with the carrying on of the business of the hospital. The factual record here is completely devoid of any reference to why the hospital was required to issue or required its employees to get this vaccine. The hospital has a completely independent duty, or rather, the hospital's duty to mandate that the workers get the vaccine does not come from their own business prerogatives. It comes from a mandate from the Department of Medicare, Department of Health and Human Services. But wasn't it a business decision to go along with that? Perhaps it was a business decision, but the Court doesn't consider any of that because the Court is only focused on whether or not Mercy is a religious institution. And they're following Laboon, and they're also following this panoply of district court cases which are affirming that Mercy is basically, from our perspective, they're affirming that Mercy is statutorily immune from suit in any case in which there's a claim of religious discrimination. And I think that that's a flawed understanding of Laboon. If you look at the Laboon decision from the Third Circuit, it's describing how, firstly, there's a factual record in Laboon that's going through and extensively examining whether or not a claim of retaliation is established. And so in the Laboon case, there is a factual consideration of a record that establishes whether or not retaliation is subject to this claim statutory exemption. Well, I want to ask you about Laboon because I think it's kind of nonsensical, and a lot of them don't even really help you. Like, for instance, doing it for profit. There's plenty of religious organizations that do things for profit, so I'm not sure that helps. Other parts of it have arguably been overturned by the Supreme Court, or at least drawn into doubt. But where I think I end up, at least, is the plain and ordinary meaning of the word religious corporation. If you look at it, they had religious stuff all over the hospital. There's prayers throughout the day. It had Mercy in the name. It had a cross. Nuns were running it on the board of directors. It reported directly to the Catholic Church. I just can't figure out how, under the plain meaning of religious corporation, how Mercy Hospital cannot be a religious corporation. So I have two responses to that. The first response is, under the Laboon test, which as you described has some nonsensicality to it, it's a multifactorial test, we do win, I think, on at least the second, seventh, eighth, and ninth factors. So there are some factors that count, and it's Mercy is unequivocally a religious organization. But there are other factors that really don't. But you've named some of them. I think one of them that you've named was for profit, which I just completely do not understand. But go ahead. Well, what I was saying, so yes, it is true that for the purposes of the federal tax code they operate as a not-for-profit business. I would draw a distinction, though, and this is what the Spencer test analyzes. And in fact, if you look at the application for Writ that was submitted in support of Laboon, there's a strong consideration of the legislative history that supported the enactment of Title VII in the 60s, and then also this claimed exemption dealing with whether or not the corporation must be entirely owned by and only run for a religious purpose. So Spencer, I mean, from the perspective of Laboon and from the Laboon court, they come down on that issue saying, no, it's, as you said, much broader. And the fact that it is a nonprofit, I think, would be maybe dispositive in that circumstance as it being a religious organization. On the other hand, I can think of a lot of situations where there are clearly religious organizations that are selling religious and spiritual things that are used in the process of observing the religion for profit. And those are, of course, religious organizations. So some of that's just nonsense. Yeah, what I would say is the federal tax code provides not-for-profit status, but that shouldn't, I think that people are often confused about, well, it's the same thing as an independent contractor. They say, well, for federal tax purposes, they're an independent contractor. And it's like, well, no, under Missouri law, there's a seven-factor assessment of whether or not they're an agent of the corporation. So I think it's analogous. Why do we care, though, about the tax code? I mean, really, this is about an employment discrimination statute that has a legal technical term, religious corporation, which then has an ordinary meaning in Black's Law Dictionary, but also everyone knows what the word religious and corporation mean separately. So why do we care about the tax code and all these extra curricular things? Your Honor, Laboon struggles with the issue of what about my client? My client has sincerely held religious beliefs, too. The courts are not in a place to investigate the sincerity of my client's beliefs. The Hobby Lobby case makes that clear. And I understand that Mercy has a prerogative here. They want to, you know, they're a religious, you know, there's a lot of religious insignia. They submitted, you know, 5,000 pages worth of evidence supporting their status as a religious institution. But in this particular situation, you have the government saying that if my client wants to be a worker in health care, she has to get this vaccine. But as the Biden case shows, she can claim an exemption from it. And if that's what the Supreme Court is saying and that's what, you know, the regulatory authority, I think, in fairness is, it says, you know, if the exemption comports with applicable federal law, regardless, though, there must be a meaningful process for her to claim this exemption. And that wasn't provided here. That goes to the heart of my claim, which is that she was retaliated against. It's not even, it's not an instance of first-level discrimination saying, I don't like you because you have some kind of hippie New Age beliefs about the world. It's not about that. It's about I requested an exemption. Notwithstanding any consideration of my beliefs or not, I have a sincere belief as a member of this church, supported by my pastor, I have a sincere belief that this violates my religion. And that deserves equal, equally to be heard. I get all that. I just, I guess let me ask you this question, which is if they are a without a remedy? I mean, legally so. Or is there some other backup argument that I'm missing? No, absolutely not. What I would say to you, Your Honor, is that even if they are a religious corporation, they need to put a higher level of proof than what was applied at the district court level. And in particular, as I said, as to this retaliation claim, firstly, there's no consideration whatsoever in the court's record that Laboon itself, in the, you know, majority opinion, explicitly considers this retaliation claim, even in spite of their conclusion that it is a religious corporation. So there's an open question, does this even apply to retaliation as opposed to just first level religious discrimination? And then the other thing is, in the context of, you know, proving this as an affirmative defense. So, I mean, arguably, and I think that the Arbaugh case, which I relied heavily on, and Mecham, they both suggest that this is a jury question. If Mercy wants to claim a religious exemption, let them prove to a religious corporation. Is there any basis for really saying they're not a religious organization? Let's just step back and look at what we do know. You start with this. It is a non-profit organization. It's owned by the Sisters of Mercy. The Sisters of Mercy assert that their charism is that they are engaged in the healing efforts of Jesus Christ, and that they promote the religious belief in Jesus Christ by bringing healing ministry to the suffering. That's what they say. Second, they answer to an ordinary Catholic bishop, or archbishop in this case, the Archbishop of St. Louis, right? And so it's a clearly Catholic organization that's within the hierarchy of the Catholic Church. They have all sorts of formal religious things going on. Their board is made up of mostly nuns. There are crucifixes all over the place. They regularly use religious language in their mission statements. They say that they're about the business of meeting the corporal needs, and that that's their deal. It's like we meet one of those charitable goals that are present in the Christian religion, and that is that we meet the corporal needs of the suffering, right? And then they've got chaplains running around. There are priests hanging out there. I mean, can you really with a straight face say that whatever they are, they're not a religious organization? What I would say, Your Honor, is consistent with the way that 8th Circuit District Courts have interpreted Laboon, that that's absolutely correct. But that in the context of this claim, it's excessively formal to rely only upon that. And I think that's a different question. So if we say, OK, they're a religious organization, they're not necessarily immune from all suit or exempt from all suit. The claim is now they're discriminating based on my client's got a religious claim as well. And they're going to argue essentially is that what religious purpose is being advanced by Mercy Hospital in denying my client's claim, which puts us in the middle of now we're going to say who holds what belief sincerely and to what extent. And the courts kind of said we're not supposed to play that game. Exactly. And that's why, Your Honors, I think that the record needs further establishment. And in particular, I mean, my client deserves to, I mean, she can't be, it would be unconstitutional to require her to say if she is participating in health care, she has to disavow her sincerely held beliefs. And that's what Biden, that's what the Biden case is all is about. I mean, they're struggling with that. That's why they put in there that plain thing. You know, it says, I mean, I understand what they're saying about the regulation. The regulation is less clear. But it seems pretty clear to the Supreme Court that the possibility of getting an exemption is part of this rule. And that's why we can uphold it. I'm going to reserve the remainder of my time. Thank you, Your Honors. Thank you. Mr. Paul. Good morning. May it please the Court. So, Your Honors, we've already discussed a lot of the issues that directly apply to the issue before the Court. Title VII specifically says that it does not apply to religious organizations with regard to religious discrimination. And the background basis for that is the Establishment Clause. We, the government, the federal government has a problem dictating certain things with regard to religious organizations or associations or corporations. And so if someone under Title VII would otherwise have a religious discrimination claim or could otherwise request as a matter of legal course an accommodation from some controversy, policy, or practice, then Title VII does not apply to that religious organization. Otherwise, we would come head to head and clash, right, with the Establishment Clause. So that's the background. The statute's very clear. The cases are all clear. The tests are less than clear. But I would submit to Your Honors, the Laboon test, the Spencer test, they make very clear that it's not an objective checklist or requirement. These are considerations. We're supposed to weigh these, balance these, look at these. Whether any one of them is going to dictate the result, neither Laboon nor Spencer or any of these cases say that they're all required or could never be. Yes, there could be for-profit situations. There could be non-profit situations where it wouldn't lend itself to being categorized as a religious organization. There's other problems with Laboon, and I referenced this briefly but didn't give the site, which is that in the Our Lady of Guadalupe School 2020 Supreme Court decision, the United States Supreme Court said, quote, determining whether a person—so one of the factors is whether its membership is made up of co-religionists, right? But the Supreme Court says determining whether a person is a co-religionist would risk judicial entanglement in religious issues. So that clearly knocks out at least one of the factors. Then you have other factors that are really questionable relevance. So should we just kind of skip the whole Laboon thing rather than reorganizing it and trying to make it work? Your Honors, it's there. It's been applied. I think the factors or the basic concept, the construct, is important. And as two or all three of you have pointed out, there is no question that Mercy is a religious organization or corporation. And procedurally, I think it's important to also step back. First of all, this was raised in a bifurcated stage situation where the court only addressed the issue of whether Mercy was a religious organization before getting to the merits. So Mr. Ott referenced his client's request, whether Mercy considered it. They absolutely did consider it. None of that's in the record. She was a nurse in the neonatal intensive care unit. Mercy has a policy. They submit the policy is part of the record. But we didn't get to the merits of what her religious beliefs were, why it was denied. It absolutely went through that process. But at the district court level, this was bifurcated to address this issue first. Because this issue knocks it out. We don't get into the merits of whether the request was based on a sincerely held religious belief or whether it was an undue hardship. So understand that. But with regard to the summary judgment. Before you move on, on the background, the Supreme Court right now just has a case before that's related. It's the Catholic Charities Bureau versus Wisconsin Labor Review Commission. And the court talked about inquiry into whether inherently secular, inherently religious requires courts to go too far into religion. All I'm really asking is, could there be an effect from that case when they release the actual opinion that affects this case? I think there could. Although I can't see any scenario where it's going to change the outcome or result in the district court's analysis being different or the end result being different here. And so absolutely, that case is on the radar of everybody. And it certainly has overlapping issues. Again, no matter how that's resolved, I think the facts and the procedure here, which is what I was starting to say, is in support of the motion for summary judgment, we submitted 13 material facts. The plaintiff in response admitted, outright admitted, no clarification, no dispute, no argument about any of our 13 facts, that those are in the record. They are admitted. That is the basis for the district court's ruling. And we can go down the list, but the very first one was that Mercy Health Ministries is a public juridic personality of the Roman Catholic Church. The plaintiff admitted that. Mercy was founded by the Sisters of Mercy. The plaintiff admitted that and, Your Honor, went through the litany of things that establish that Mercy unequivocally is a religious organization. But more importantly, for purposes of this decision by the district court, the plaintiff admitted each and every one of Mercy's undisputed material facts that was proffered with its motion for summary judgment. So I think that's important to realize and understand. You have to also, as all of you have done, step back and look at, yes, not only was it a church, but it continues through its bylaws, through its policies, continue that mission and value. What plaintiff initially argued, and I'll get to connected with the religiosity, whether the COVID vaccine policy or the exemption process was connected with that, what plaintiff initially argued is that somehow Mercy waived its defense or its argument that this provision, 42 U.S.C. section 2000-E, that exempts religious organizations, somehow Mercy waived that. The cases that were submitted go all the way back two decades to 2011, where Mercy has continually, repeatedly made this argument in the context of religious discrimination claims. This argument does not apply to race discrimination, age discrimination, disability discrimination. In fact, Mr. Ott has a current pending, we were talking discovery yesterday, in a race discrimination case against Mercy Hospital St. Louis. Mercy's not raising this issue in the context of a Title VII race discrimination case because the statute doesn't provide for that. But there is no waiver in anything Mercy has done over the last several decades that waives that one, that it's a religious organization or corporation, or waives this provision. There's also dispute, talk, argument on whether it's an affirmative defense or jurisdictional. I would submit that the way the statute's written, I think it's more jurisdictional than an affirmative defense because it outright, expressly says, this subchapter shall not apply to religious corporations. But even if it's an affirmative defense, the record in this case, for purposes of the summary judgment, clearly establishes that Mercy has met, whether it's a defense, whether it's a jurisdictional requirement, whether it's an element in plaintiff's case, plaintiff can't disprove it, and Mercy has proven it based on this record. Now, getting to the issue of whether it was connected with the religious mission or doctrine of Mercy, plaintiff did not raise that below with the district court, that argument, and did not raise it in her opening brief. It was only in the reply brief that that was made. One argument, the initial response to that is, is that that's waived because it wasn't argued before. But more importantly, I don't think there's any logical possibility or basis to argue that when Mercy is established as a healthcare ministry of the Catholic Church, that having a policy that employees should be vaccinated, again, and there's also a flu vaccine policy that's been in place for 10 plus years. Obviously, the COVID vaccine policy only came into place in 2021, during the pandemic. But I don't see how there's any conceivable argument that Mercy's healthcare ministry, to keep not only patients safe, to make them well, to heal them, would be implementing a policy such as a COVID vaccination policy. So, it's clearly connected with Mercy's religious ministry of providing healthcare to its patients. Pope Francis, the head of the Catholic Church, made a very clear statement during the pandemic that it's every Catholic's duty to get vaccinated, not only for themselves, but for the love and care of others surrounding them in the community. Even more so, obviously, we have healthcare workers and plaintiff was a nurse in the neonatal intensive care unit. That's definitely connected, yes, with healthcare, but with Mercy's religious ministry of healthcare that's established in all of the documents. And so, even if that belated argument hasn't been waived, I don't see how anybody could establish, or show, or argue that having a policy to ensure safety of its employees and its patients during the pandemic, or otherwise, is not somehow connected to its ministry. That new argument, or extra argument, that isn't required by the case law or by the statutes. The statute doesn't say, for instance, that a religious organization is not subject to a religious discrimination claim under Title VII, only if it's specifically only part of a religious decision or policy. It says that this chapter shall not apply to those religious corporations. So, again, and if we did try to scrutinize or get into all the minutiae about what's religious or what's not, Mercy's religion versus plaintiff's religion, that, as you have pointed out, would cause some problem. Constitutional issue with a court or the federal government weighing what was religious or not, or what's sincerely held, or what Mercy's mission is in relation to or in support of its health ministry. So, and to the extent that plaintiff also argued, at least initially, it seems like the arguments kind of changed between what was argued in the district court, the opening brief, and then the reply brief of plaintiff, had argued that because the government required Mercy to vaccinate its employees, unless they had an exemption, that somehow Mercy wasn't doing that in furtherance of its religious mission. Well, two things about that. Number one, Mercy had implemented a policy, which is part of the record, and plaintiff put in the COVID vaccination policy about a year before the federal mandate for COVID vaccination of health care workers. So Mercy, again, had a flu vaccine policy in place for ten plus years, had already planned and implemented a COVID vaccination policy prior to the federal mandate. As Natalie, you pointed out, Mercy didn't have a choice, at least if it was going to preserve its Medicare and Medicaid reimbursement for patients. It didn't have a choice but to comply with the CMS mandate for vaccination. And so, number one, Mercy took steps separate in part from the mandate, even if Mercy was subject to the mandate or decided to implement or enforce this policy pursuant to the mandate of the federal government, that can't serve as a waiver. A waiver of statutory rights, defense, argument that statute doesn't apply, which is really what we have here, can't be waived by accident. It has to be an intentional and clear disavowment or steps or actions contrary to what the defense or what the argument would be. So if Mercy said, yeah, we understand that Title VII doesn't require us to abide by religious discrimination prohibitions, and I'm not sure this would work. We welcome the federal government or the EEOC's jurisdiction to come in and tell us what to do with regard to religious discrimination claims by our employees. I'm not sure they could do that, but that would be potentially, arguably, an intentional waiver, right, or disavowment of a defense or a statutory provision. Here, Mercy for decades, from its very origin as part of the Catholic Church, has done nothing other than, both internally in its structure, in its origin, in its bylaws, in its articles, in its reports to the Vatican and to Rome, has done nothing other than clearly establish that it is a part, an actual structure within the Catholic Church, but even outwardly towards employees, with prayers, with the symbolism. Think of it this way. Mercy wouldn't be able to use the language or the logos or the symbolism or require uniforms with a cross on it if it was subject to religious discrimination On the waiver point, I wonder if it refers to in-court behavior, that the way you waive the affirmative defense is by coming into court and not arguing it, versus it seems strange to say, well, throughout of court behavior, you've waived this affirmative defense that you don't know yet exists or applies to anyone. I totally agree, Your Honor. Several of the cases, including the U.S. Supreme Court's case, the Arbaugh decision, clearly are addressing or discussing situations where in-court, in litigation, either out of negligence or an intentional strategy, didn't raise certain arguments. In that case, raising a jurisdictional argument about how many employees they had after there was a jury trial, for instance. You're absolutely right. A lot of the examples that plaintiff puts in the briefing and in the arguments are dealing with the litigation procedural type of waiver arguments, as opposed to anything that is done outwardly with regard to patients or employees. I see my time is up, unless there are any further questions. I see none. Thank you. Thank you. So, Your Honor, just in reply to a few of the matters raised, firstly, we contend that we did raise this issue about whether or not my client can win, even if they're a religious organization before. And we did so in the context of the Arbaugh case, because what we're saying is, even if there's an affirmative defense that they're a religious organization and they're protected by this exemption, that they still have to prove all the facts relevant to that affirmative defense in order for it to apply. What do you mean by that? Do you mean re-prove that they are a religious organization? This goes to the whole issue with Lope or Bright and how we're supposed to interpret this statutory exemption. They need to prove that it fits within the statutory language, meaning that it, I apologize, they need to prove that it's connected with the carrying on of their business. And, for instance, in Appalee's argument, they started the vaccination policy before. So, maybe if they started it before, my client can't claim religious discrimination. But as soon as the government comes in and puts an independent obligation on Mercy to offer these exemptions, then at that point, they have to offer the exemption. And she has to have a meaningful process through which she can assert her sincerely held religious belief. Is there any dispute that there was the process at Mercy? Not a meaningful one. Because in this context, my client's claim from the pleadings, and again this wasn't well developed in the factual record because the court was treating it as basically a jurisdictional requirement. But my client's claim is that the policy as applied to her was not effective in that basically she was terminated before it was meaningfully reviewed. Although, I will again emphasize, as Appalee did as well, that there's no record of that process. And that's part of what the basis of our appeal is. Does that answer your question? Yeah, I'm struggling with the difference between finding that whether or not Mercy is a religious corporation and what you've added on as additional burdens of proof on an affirmative defense. Well, I'm not trying to make it an additional burden of proof. I mean, as I said with the Eighth Circuit jury instruction binder, I mean, there's a way to prove an affirmative defense with elements. And I think that if you, this is what the Mecham case says, is like if you treat this affirmative defense as, you know, there's only, it's basically irrefutable affirmative defense, then that converts it from being a affirmative defense into a jurisdictional bar. And that that's what Arbaugh prohibited, would be my answer to that. Thank you to counsel. Appreciate your time. Thank you, your honors. Does that conclude our argument schedule for today? Yes, your honor. All right. Well, to the extent there are any